THE PATERSON GAS LIGHT COMPANY *vs.* JOHN BRADY.

1. A gas company incorporated for the purpose of lighting the streets and buildings of a town, is not obliged to supply gas to all persons having

buildings situated on the line of their pipes, upon being tendered a reasonable compensation.

2. The jury returned for the trial of an appeal in the Court of Common Pleas must be drawn from the box, as in other cases.

This was a *certiorari* to the Court of Common Pleas of the county of Passaic, to bring up the judgment and proceedings in a case of appeal from a justice's court. The nature of the action will appear in the opinions of the judges. A verdict was rendered for the plaintiff, after a charge from the court, for seventy-five dollars damages.

Argued before Justices ELMER, POTTS and VREDENBURGH.

*Gledhill*, for the plaintiff in *certiorari*.

*Tuttle*, for defendant.

ELMER, J. The question arises in this case, whether the Paterson Gas Light Company was bound, upon general principles, or as a duty imposed upon them by their charter, to furnish gas to all buildings on the lines of their main pipes, upon the applicants therefor agreeing to pay the fixed price, and to comply with such reasonable regulations as the company had established, as the court held in their charge, and as is assumed in the plaintiff's state of demand, and was insisted on in the argument before this court.

That no such duty arises out of the mere facts that the company made gas, laid pipes in the streets, and actually furnished it to many persons, may be safely assumed. Innkeepers and common carriers are bound to receive all who properly apply to them, but this is a duty peculiar to them. I fully concur with what is said by Judge Bronson, delivering the opinion of the court in *Wells* v. *Steam Nav. Co.*, 2 *Comst.* 209. "Other bailees and persons engaged in other employments are not, like common carriers and

inn-keepers, bound to accept employment when offered ; nor, like them, tied down to a reasonable reward for their services. They are at liberty to demand an unreasonable price before they will undertake any work or trust, or to reject employment altogether." And see *Redfield on Railways* 293–4, *and note.*

But the court, in the charge, rested this duty on the terms of the act of incorporation. The language is, " they were incorporated with the special powers of their charter for the purpose of lighting the streets, buildings, manufactories, and other places in this city, not such particular streets, buildings, and mills as the caprice of their stockholders or officers may elect."

Upon looking into the charter, (*Acts of* 1825, *p.* 102,) it appears to be simply an act of incorporation, giving the company " power and authority to manufacture, make, and sell gas, for the purpose of lighting the streets, buildings, manufactories, and other places situate in the said town of Paterson," and for that purpose to purchase, take, and hold real estate, and to make contracts ; provided, that the said real estate shall not exceed what may be absolutely necessary to effect the purposes of said company, and that no public or private land shall be dug into, or in any way injured or defaced, without permission being first obtained in writing from the owner or owners thereof. No monopoly or special privileges are granted, except that the company is entitled to recover double damages for any willful injury done to the pipes or other works.

The state of demand does not assume, nor was it insisted on in the argument, that the charter imposes upon the company the duty of supplying gas to all the town, but only to persons having buildings on the line of their pipes. In my opinion it imposes no duty of either description, but simply empowers the incorporation to do what private individuals might have done without any charter. There is nothing in the act indicating any intention to impose any duty that would not have devolved on an in-

dividual erecting gas works; nor is there anything to prevent another company, or any individual who can obtain the permission of the city and the owners of the land, from setting up a rival manufacture, and placing pipes alongside of those belonging to the company. Most of the acts incorporating gas companies do, what this does not, authorize the company, in express terms, to place their pipes in the public streets; but I am not aware that any of them impose the express duty of furnishing gas to all the persons demanding it, or to any of them. The Paterson company is authorized to make and sell gas, which, in the absence of any indication to the contrary, implies that they may fix their own price, and choose their own customers, like any other manufacturer. If the duty of furnishing gas to those requiring it was meant to be imposed, it would doubtless be expressed, and not be left to mere inference. If it is to be inferred, what is to be the limit? Why have not all the inhabitants of the town the same right to demand it as those having buildings on the streets along which the pipes are placed? The charter sets forth the general purpose of lighting all the streets and buildings, and the court below seems to have held that the company has no choice in the matter. But what company in the state, or elsewhere, could have ventured to assume such a responsibility as that?

The language of the charter is throughout permissive, and not compulsory. The company may organize, may make and sell gas or not, at their pleasure; and I see no more reason to hold that the duty of doing so is meant to be imperative, than to hold that other companies incorporated to carry on manufactures, or to do any other business, are bound to serve the public any further than they find it to be their interest to do so. It was earnestly insisted, on the argument, that the community have a great interest in the use of gas, and that companies set up to furnish it ought to be treated like inn-keepers and common carriers, and that, if no precedent can be found

for such a decision, this court ought to make one. But that there is no authority for so holding in England or America, where companies have been so long incorporated for supplying water and gas to the inhabitants of numerous towns and cities, affords a strong presumption that there is no principle of law upon which it can be supported.

Had the plaintiff averred that the company had held out to the persons occupying buildings on the streets along which the pipes are laid, that it was ready to furnish gas to those providing the requisite fixtures and accepting the prescribed terms, and that he had done this, and that, in consequence of a breach of a contract, thus or otherwise entered into, he had suffered damages, the case would have been very different. But this is not the nature of his claim. He claimed and has recovered damages, and it would seem exemplary damages, simply on the ground that it was the duty of the company to furnish gas on the streets where the pipes are laid, to all persons demanding it, and offering to pay a reasonable price. Assuming this principle, it was left to the jury to say whether one of the rules of the company was reasonable. Being of opinion that the state of demand discloses no good cause of action, and that the court erred in the charge, I think the judgment must be reversed.

There is also another error in the proceedings. It appears that, before the hearing of the appeal, the court discharged the jurors in attendance from two townships, without drawing them, as required by the 28th section of the act relative to juries. *Nix. Dig.* 385. When the appeal was called, a jury was demanded, and the sheriff having returned a panel, the defendant below objected, and the objection being overruled, the jury was sworn. The correctness of this ruling can only be maintained by holding that when the sheriff returns a panel in the Court of Common Pleas for the trial of an appeal, as required by the 48th section of the small cause act, he is not required to

draw them from the box, but may return a special panel. The act relative to juries, whether considered as cotemporaneous with the small cause act, or as subsequent, according to its actual date, applies to all jury cases not specially excepted, and includes appeals. The language is unqualified, and any other construction would be inconvenient, if not impracticable. The uniform practice has been to draw jurors in such cases. To depart from this practice will be to introduce a needless exception from the general policy of the law, designed to secure an impartial jury.

POTTS, J., concurred.